Darrell Cochran
Pfau, Cochran, Vertetis & Amala, PLLC
909 A St. Suite 700
Tacoma, WA 98402
(253) 777-0799
darrell@pcvalaw.com

Kevin M. Hastings
Pfau, Cochran, Vertetis & Amala, PLLC
909 A St. Suite 700
Tacoma, WA 98402
(253) 777-0799
kevin@pcvalaw.com

Chris Torrone
Torrone Law
705 S. 9th Street
Ste 201
Tacoma, WA 98405
(253) 327-1280
chris@torronelaw.com

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| RENEE POND, individually and on behalf of her minor children, P.D. and C.D.; STEWART DUNCAN, an individual; MICHELLE THOMAS, individually and on behalf of her minor child, O.T; DEONTE THOMAS, individually; MIRANDA DELLINGER, individually and on behalf of her minor child, C.D.2; MITCHELL DELLINGER, individually; ALESSANDRA GARZA, individually and on behalf of her minor child, C.G.; BREANNA ROHDE, individually and on behalf of her minor child, D.C.; JOSHUA CAMPOS, individually; BAYLEN ARMENDARIZ, individually; OSCAR ARMENDARIZ, individually; KELLON HAYDEN, individually;<br><br>Plaintiffs,<br><br>vs.<br><br>ELIZABETH ALLISON WOODS, individually; STATE AGENTS 1-10, individually,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND DAMAGES**<br><br>Demand for Jury Trial |

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES

Page 1 of 19



**COMES NOW** Plaintiffs, by and through their attorneys Darrell L. Cochran and Kevin M. Hastings of Pfau Cochran Vertetis Amala PLLC, and Chris Torrone of Torrone Law, LLC, bring a cause of action against Defendants and allege the following:

## I. INTRODUCTION

1. <u>Nature of Case</u>.  Defendant State Agents 1-10 of the Washington State Department of Health Services, now known as the Department for Child, Youth, and Families ("DSHS"), had a clear legal mandate to protect children from child abuse by ensuring DSHS exercised reasonable care in removing children from biological parents.  Defendant State Agents 1-10 duty to a child victim when investigating child abuse derives from RCW 26.44.050, which states in relevant part, "upon the receipt of a report alleging that [child] abuse or neglect has occurred, . . . the department must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court."  Parents of the children are part of the class whose "especial" benefit the statute was enacted pursuant to RCW 26.44.010, which states:

> The Washington state legislature finds and declares: **The bond between a child and his or her parent, custodian, or guardian is of paramount importance**, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian

(Emphasis added).

2. <u>Nature of Case</u>.  The counterpart to Title 26, RCW 13.34.020, "further evinces the Legislature's strong views regarding the importance of the family, stating that 'the family unit is a fundamental resource of American life which should be nurtured." *Tyner v. State Dept. of Soc. and Health Servs*, 141 Wn.2d 68, 79 (2000).  Under this statutory framework, the Washington State Supreme Court has held that the State agents have a "duty to act

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

reasonably in relation to all members of the family . . . children are protected from potential abuse and needless separation from their families and family members are protected from unwarranted separation of their children." *Id*.

3. <u>Nature of Case</u>. The United States Constitution has also long recognized and protected the rights of parents and children to familial association under the Fourteenth, First, and Fourth Amendments. *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) ("In sum, our case law clearly establishes that the rights of parents and children to familial association under the Fourteenth, First, and Fourth Amendments are violated if a state official removes children from their parents without their consent, and without a court order, unless information at the time of the seizure, after reasonable investigation, establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury, and the scope, degree, and duration of the intrusion are reasonably necessary to avert the specific injury at issue."). The Constitution has also long recognized the right to be free from deliberate fabrication of evidence as articulated in *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017) (recognizing parents are protected from "deliberately fabricated evidence in civil child dependency proceedings" where their "protected familial liberty interest is at stake."). *See also*, *Lesley for Lesley v. Dept. of Soc. And Health Srvs*, 83 Wn. App. 263 (1996) (issues of fact remained about whether the caseworkers deprived the plaintiffs of a constitutional right, including whether a reasonable caseworker would not have known the contours of the "well-established family unity right.").

4. <u>Nature of Case</u>. This case presents the situation where Defendants abused their statutory power and constitutional duties by deliberately, consciously, and/or recklessly conducting an investigation of child abuse and/or concealed exculpatory evidence in the legal removal process in permitting and/or advocating for the removal of children from families. Rather than faithfully presenting evidence supporting a child's removal to a court of law,

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

DSHS through its agents misled the courts into removals that damaged the paramount "bond between a child and his or her parent." RCW 26.44.010.

5. <u>Nature of Case</u>. Dr. Woods at all relevant times was an agent or quasi agent of the State. Dr. Woods served the State as one of its regular experts in evaluating claims of alleged child abuse. Dr. Woods had a financial incentive by virtue of this relationship. As an expert witness in alleged child abuse cases, Dr. Woods was tasked by the State with offering medical opinions on whether a child's injury was the result of abuse. Her testimony in these cases was often the driving factor in deciding whether a child should be separated from their parents.

6. <u>Nature of Case</u>. State Agents 1-10 at all relevant times retained Dr. Woods as an agent of the State to support State seizures of children from parents based on alleged child abuse. Defendants knowingly championed Dr. Woods as an expert in child abuse and neglect, knowing that her opinions were heavily relied upon by the judiciary to remove children from family homes. State Agents 1-10 in turn supplied Dr. Woods' opinions to the judiciary and other decision makers with knowledge that they would be heavily relied upon to remove children from family homes.

7. <u>Nature of Case</u>. Minor Plaintiffs in this matter were all children seized from their family home due to Dr. Woods' opinions that were supplied by State Agents 1-10 to the judiciary and/or other decision makers. Dr. Woods provided false, incomplete, and/or unsupportable evidence as a basis to remove the minor Plaintiffs from their family homes. Dr. Woods' actions were done with deliberate indifference toward Plaintiffs' constitutional and statutory rights in handling related investigations of alleged abuse. The State Agents 1-10 also acted with deliberate indifference in offering Dr. Woods medical opinions to the judiciary to win a child seizure despite knowing they were false, misleading, and/or unsupported by the evidence.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES



8. <u>Nature of Case</u>.  Prior to Minor Plaintiffs' seizures, Dr. Woods had a history of giving false and/or misleading opinions during child abuse investigations.  Dr. Woods' pattern and practice was to eschew or ignore exculpatory evidence, and instead to aid and abet as an advocate for the State Agents in sustaining allegations of abuse and neglect.  Dr. Woods had a history of giving false and/or misleading testimony in litigation regarding the removal of other minors from family homes to support her position and conclusions.  Dr. Woods knew that her opinions were false, incomplete, and/or unsupportable and did not provide the full picture.  State Agents knew Dr. Woods' opinions were false, incomplete, and/or unsupportable, and also knew that she lacked the training and credentials to conduct the evaluations.  Defendants also knew that Dr. Woods had a history of providing false testimony.  And Defendants knew that her opinions were being relied upon by the judiciary to support and/or justify the removal of children from family homes where no abuse had in fact occurred. Defendant Woods benefited financially from State contracts in aiding and abetting the improper seizure of children from parents.

9. <u>Nature of Case</u>.  This action to recover damages for constitutional and statutory deprivations under 42 U.S.C. § 1983 for Defendants' acts under the color of law and with deliberate indifference and/or conscious disregard that deprived Plaintiffs of constitutional and statutory rights.

## II.     PARTIES

10. <u>Plaintiff Renee Pond:</u> At all times material, Plaintiff Renee Pond was the parent and legal guardian of minor children P.D. and C.D and suffered injury and damages as a result of having her children removed from her care after Dr. Woods falsely accused her of child abuse. Plaintiff Renee Pond currently resides in Lewis County, Washington.

11. <u>Plaintiff Stewart Duncan:</u> At all times material, Plaintiff Stewart Duncan was the parent and legal guardian of minor children P.D. and C.D. and suffered injury and

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

damages as a result of having his children removed from his care after Dr. Woods falsely accused him of child abuse. Plaintiff Stewart Duncan currently resides in Lewis County, Washington.

12. <u>Plaintiff Michelle Thomas:</u> At all times material, Plaintiff Michelle Thomas was the parent and legal guardian of minor child O.T. and suffered injury and damages as a result of having her children removed from her care after Dr. Woods falsely accused her of child abuse. Plaintiff Michelle Thomas currently resides in Pierce County, Washington.

13. <u>Plaintiff Deonte Thomas:</u> At all times material, Plaintiff Deonte Thomas was the parent and legal guardian of minor child O.T. and suffered injury and damages as a result of having his children removed from his care after Dr. Woods falsely accused him of child abuse. Plaintiff Deonte Thomas currently resides in Pierce County, Washington

14. <u>Plaintiff Miranda Dellinger</u>: At all times material, Plaintiff Miranda Dellinger was the parent and legal guardian of minor child C.D.2 and suffered injury and damages as a result of having her child removed from her care after Dr. Woods falsely accused her of child abuse.  Plaintiff Miranda Dellinger currently resides in Pierce County, Washington.

15. <u>Plaintiff Mitchell Dellinger:</u> At all times material, Plaintiff Mitchell Dellinger was the parent and legal guardian of minor child C.D.2 and suffered injury and damages as a result of having his child removed from his care after Dr. Woods falsely accused her of child abuse. Plaintiff Mitchell Dellinger currently resides in Pierce County, Washington.

16. <u>Plaintiff Alessandra Garza:</u> At all times material, Plaintiff Alessandra Garza was the parent and legal guardian of minor child C.G. and suffered injury and damages as a result of having her child removed from her care after Dr. Woods falsely accused her of child abuse. Plaintiff Alessandra Garza currently resides in Pierce County, Washington.

17. <u>Plaintiff Breanna Rohde</u>: At all times material, Plaintiff Breanna Rohde was the parent of minor child D.C. and suffered injury and damages as a result of having her child

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES



removed from her care after Dr. Woods falsely accused her of child abuses. Plaintiff Breanna Rohde currently resides in Pierce County, Washington.

18. <u>Plaintiff Joshua Campos</u>: At all times material, Plaintiff Joshua Campos was the parent of minor child D.C. and suffered injury and damages as a result of having his child removed from his care after Dr. Woods falsely accused him of child abuse. Plaintiff Baylen Armendariz currently resides in Pierce County, Washington.

19. <u>Plaintiff Baylen Armendariz</u>: At all times material, Plaintiff Baylen Armendariz was the parent of minor children C.A. and L.A. and suffered injury and damages as a result of having her infant sons removed from her care after Dr. Woods falsely accused her of child abuses. Plaintiff Baylen Armendariz currently resides in Kitsap County, Washington.

20. <u>Plaintiff Oscar Armendariz</u>: At all times material, Plaintiff Oscar Armendariz was the parent and legal guardian of minor children C.A. and L.A. and suffered injury and damages as a result of having her children removed from her care after Dr. Woods falsely accused her of child abuse. Plaintiff Oscar Armendariz currently resides in Kitsap County, Washington.

21. <u>Plaintiff Kellon Hayden</u>: At all times material, Plaintiff Kellon Hayden was the parent and legal guardian of minor children O.H. and C.H. and suffered injury and damages as a result of having his children removed from his care after Dr. Woods falsely accused him of child abuse. Plaintiff Kellon Hayden currently resides in Pierce County, Washington.

22. <u>Defendant Elizabeth Woods</u>. Dr. Woods at all relevant times was a State agent, or alternatively quasi-State agent, acting under the color of law and with deliberate indifference toward Plaintiffs' constitutional and statutory rights. At relevant times, Dr. Woods was a resident of Pierce County, Washington.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES



23. <u>Defendants State Agents 1-10:</u> Defendants State Agents 1-10 are State agents, as yet undetermined, who engaged in acts and omissions of a deliberately indifferent nature, which proximately resulted in the deprivation of the civil rights of Plaintiffs.

### III. JURISDICTION AND VENUE

24. <u>Jurisdiction.</u> This Court has personal jurisdiction pursuant to RCW 4.28.185. Subject matter jurisdiction is predicated on federal question jurisdiction (28 U.S.C. §1331 and § 1343) due to claims under 42 U.S.C. §1983.

25. <u>Venue.</u> Venue is proper in this district under 28 U.S.C. § 1391(b), since all defendants reside, or resided, in this district, and the events giving rise to this action occurred in the Western District of Tacoma.

### IV. FACTS

26. Washington has long recognized that the State can only remove children from their family home in situations of a probable cause of imminent danger of serious bodily injury. The law has also long recognized the civil remedy for improper removals where the State removes children in depravation of the "well-established family unity right." *Lesley for Lesley v. Dept. of Soc. And Health Srvs*, 83 Wn. App. 263 (1996); RCW 26.44.010; *see also*, *e.g.*, *Mabe v. San Bernardino Cnty. Dep't of Public Soc. Servs.*, 237 F.3d 1101 (9th Cir. 2001) ("The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies."); *James v. Rowlands*, 606 F.3d 646 (9th Cir. 2010) ("The Fourteenth Amendment protects parents' fundamental right to participate in the care, custody, and management of their children."); *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017) (recognizing parents are protected from "deliberately fabricated evidence in civil child dependency proceedings" where their "protected familial liberty interest is at stake."); *David v. Kaulukukui*, 38 F.4th 792 (9th Cir. 2022) (discussing the right to familial association under the constitution).



27. In *Lesley for Lesley*, a young child was removed from her family by State caseworkers after her birthmarks were mistaken for bruises. The trial court summarily dismissed a § 1983 action against the State caseworkers, finding that they enjoyed qualified immunity. The Court of Appeals reversed and held that issues of fact remained about whether the caseworkers deprived the plaintiffs of a constitutional right, including whether a reasonable caseworker would not have known the contours of the "well-established family unity right."

28. For years, authorities in Washington, including State Agents 1-10, championed Dr. Elizabeth Woods as one of the State's preeminent experts on spotting signs of child abuse, often holding out her medical opinions to persuade courts to allow the State to remove children from parents or even file criminal charges. State child welfare officials, including State Agents 1-10, granted Dr. Woods remarkable influence over their decisions, despite Dr. Woods's lack of proper credentials.

29. State Agents 1-10 retained Dr. Woods as one of its regular experts in evaluating claims of child abuse. Dr. Woods at all times relevant was acting under color of law as an agent of the State, or alternatively, a quasi-agent.

30. As an expert witness in alleged child abuse cases, Dr. Woods was tasked by State Agents 1-10 with offering medical opinions on whether a child's injury was the result of abuse. Her testimony in these cases was often the driving factor in deciding whether a child should be separated from their parents.

31. Plaintiffs Renee Pond and Stuart Duncan noticed that their one-month-old baby, P.D., had discomfort in her arm, so they took her to the doctor for an assessment and X-ray. Within one day of testing and with Dr. Woods' report, which was rushed without considering the full panoply of evidence, done out of financial motivation and to keep State referrals for work coming, both P.D. and her twin sister C.D, were taken away from their



parents. Soon after, it was discovered that the girls had been born with a metabolic bone disease, likely caused by Renee's difficult pregnancy. Despite this evidence to contradict Dr. Woods' assessment, the girls remained in CPS custody.

32. Orthopedic surgeon, Dr. Nathan Frost did an x-ray of Renee Pond's daughters two weeks after they had been taken by CPS. Dr. Frost stated that P.D.'s leg had never been broken and it was a condition that she had been born with. This was later confirmed by Dr. Susan Gootnick.

33. Dr. Susan Gootnick's evaluation of Renee Pond's daughters, P.D. and C.D., found that bilateral symmetrical nature of the poorly calcified areas of rib bones in both babies were evidence of metabolic bone disease and healed fractures that could have occurred at birth. Dr. Gootnick stated, "This does not happen in child abuse." She concluded, "This is a classic example of neonatal rickets."

34. Plaintiffs Michelle and Deonte Thomas brought their daughter, O.T., to the hospital after she fell off a bed and hit her head while Deonte changed her diaper. Doctors sedated her and did an MRI without advising the parents, and by the end of the day, the parents were ordered to leave the hospital without O.T. Two days later, Dr. Woods examined O.T. and stated that she should be taken out of Michelle and Deonte's custody. O.T.'s primary doctor and two medical experts consulted confirmed that she had a preexisting condition called subdural hygroma, explaining the test results that Dr. Woods had erroneously relied upon in her report.

35. Dr. Joseph Scheller reported on Deonte and Michelle's daughter, O.T. He disagreed with Dr. Woods and stated that O.T. showed no signs of child abuse. She had a preexisting conduction causing fluid accumulation in her brain, called subdural hygroma. Dr. Scheller addressed the fact that Dr. Woods did not note this condition in her report, nor did

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

she cite other medical articles published by child abuse pediatricians about similar injuries seen in short falls.

36. Dr. Evan Matshes also evaluated O.T.'s medical records and Dr. Woods' report. He stated that Dr. Woods did note that O.T.'s head circumference was greater than 97 percentile for her age, but she did not investigate this element further. Dr. Matshes explained that this could have made O.T. more suspectable to subdural hemorrhages with seemingly minor trauma or accidents. He concluded that O.T. did not fit into the majority of symptoms usually associated with child abuse.

37. Plaintiffs Miranda and Mitchell Dellinger noticed blood in the mouth of their newborn baby, C.D.2. The Emergency Room doctors found he had an abrasion on his tonsil and torn frenulum. Dr. Woods examined C.D.2 and angrily told Miranda that she was suspected of child abuse because the injury was in his mouth. Miranda had a possible explanation, but it was not considered. After 17 hours of police and CPS interrogation, Miranda was told to leave and C.D.2 was kept at the hospital, even though two sets of Tacoma police department officers had interviewed the parents and advised Dr. Woods that there should be no action. Dr. Woods held Miranda and C.D.2, while King County Police were called in to back up her assessment. Based on Dr. Wood's insistence, King County Police agreed to take C.D.2 away.

38. Two shifts of Tacoma Police Officers did not agree with Dr. Woods' assessment that C.D.2 should be taken away from his mother. Dr. Woods had to call in a third set of police from a different county, to follow her wishes. The CPS caseworker in this case also questioned the report of Dr. Woods and sent out a request for a second opinion. This caseworker was reprimanded by Dr. Woods for his probing.

39. Plaintiff Alessandra Garza cared for her own son C.G., and was babysitting for another child, Alex Cornfield. Alex became sick while in her care and was admitted to the

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES



Page 11 of 19

hospital. The next day, police and CPS came to take C.G. to the hospital for testing. C.G. was taken from Alessandra after Dr. Woods accused her of abusing Axel. Later medical examinations revealed that Axel had a chronic condition that was missed by Dr. Woods, and it was not because of trauma. C.G.'s medical tests came back normal, yet he was still taken from Alessandra.

40. In regard to Alessandra Garza's son C.G., medical expert Dr. Joseph Scheller stated, "I am disappointed that the child abuse doctor [Woods] at Mary Bridge ignored this finding and did not address it in her note, this omission would be a breach of standard care." He concluded that the child (Axel) had a "chronic condition that was missed by the child abuse specialist."

41. Plaintiffs Breanna Rohde and Joshua Campos brought their son, D.C., to a babysitter while there were at work. The babysitter called the police to report bruising. The police picked up D.C. and took him to the hospital, where tests were performed, and photographs taken by a CPS caseworker. Dr. Woods based her assessment on the photographs and accused Breanna and Joshua of malnourishment, physical abuse, and strangulation. The anemia that D.C. had been born with was not considered by Dr. Woods, and D.C. was put into a group home.

42. Plaintiffs Baylen and Oscar Armendariz took their six-week-old sons, C.A. and L.A. to a hospital when they noticed L.A. had a swollen leg. X-rays revealed broken bones in both boys, and after additional medical tests and consultations, the police ordered Baylen and Oscar to leave, while the boys were taken into custody by CPS. Dr. Woods did not look for alternative explanations for bone breaks in the babies, even though they had been born premature and had been in the NICU for the first three weeks of their lives. As a result of Dr. Woods' report, C.A. and L.A. were kept in foster care.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND DAMAGES

PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 12 of 19

43. Kellon Hayden's nine-year-old stepson was examined at the hospital for a bruise on his inner thigh, reported by an elementary teacher. CPS was then sent to Kellon's house to check on O.H. and C.H. Ten days after the examination and medical report of Kellon's stepson, the two children were taken from the home and sent to live with their maternal grandmother.

44. As to each of the Plaintiffs, the State Agents 1-10 ignored, overlooked, or failed to document exculpatory evidence for presentation to the court determining the validity of removal of Plaintiffs and regarding investigations into alleged abuse of minor Plaintiffs. The State knowingly relied upon Dr. Woods despite what it should have known, namely, that Dr. Woods was financially motivated and not serving the best interests of the children, that Dr. Woods examinations and opinions were biased and did not fairly present evidence, and that Dr. Woods overlooked or ignored exculpatory evidence.

45. In 2018, questions about the reliability and accuracy of Dr. Woods's expert medical reports, qualifications, and training began to surface. At the time, Dr. Woods was the Medical Director of the Children's Abuse Intervention Department at Mary Bridge Children's Hospital in Tacoma. Dr. Woods was on a small roster of doctors providing medical reports to the State's child welfare agency as requested by State Agents 1-10, and she also acted as a medical expert in several cases.

46. At a court hearing in May 2019, Dr. Woods admitted under oath that she had not completed the requisite three-year medical fellowship to become certified as a medical child abuse specialist. She also admitted that she had not passed the exam required for board certification in the medical subspecialty. Dr. Woods defended her qualifications by asserting that most doctors who specialize in identifying child abuse have not completed the fellowship training. Dr. Woods further claimed that the fellowship training program was just three years old at the time. And Dr. Woods asserted that working on peer review boards with other



Case 3:22-cv-05849   Document 1   Filed 11/02/22   Page 14 of 19

experts and assisting in the fellowship training program qualified her to be an expert in diagnosing medical child abuse.

47. But an investigation by the National Broadcasting Company (NBC) and its Seattle affiliate, KING 5 News, revealed that Dr. Woods's statements were grossly inaccurate and misleading. In fact, Dr. Woods was the only doctor providing medical opinions to the State's Child Protective Services without decades of experience. Investigators further uncovered that Dr. Woods was the only doctor who did not complete the fellowship program. And contrary to Dr. Woods's testimony, the American Board of Pediatrics has required since 2009 that pediatricians who wish to specialize in child abuse to complete a three-year fellowship program and pass a board certification exam. That requirement was in effect while Dr. Woods was still in medical school. Currently, there are more than 375 child abuse pediatricians certified by the American Board of Pediatrics, three of whom are in Washington.

48. A review of Dr. Woods's prior reports revealed that she had misstated key facts and presented contradictory opinions from other experts. Dr. Woods' motivation was financial: the State compensated her for each report or evaluation, and her business relationship with the state yielded more money with each report. The State of Washington Child Protective Services removed many children from their parents' custody on account of her findings. Law enforcement and prosecutors also relied on Dr. Woods's opinions to charge parents with violent crimes against children.

49. Each of the adult Plaintiffs in this case had their children removed from their care by Dr. Woods and State Agents 1-10's actions. State Agents 1-10 withheld information regarding Dr. Woods' lack of qualifications and training despite using her opinions to forcibly separate minor Plaintiffs from their family parents. State Agents 1-10' reliance on Dr. Woods was unreasonable given her lack of qualifications and evidence that she was rendering improperly motivated opinions. State Agents 1-10 knew or should have known that facts



stated in Dr. Woods's reports were misleading or misstatements of the truth. State Agents 1-10 did not conduct a reasonable inquiry into each minor Plaintiff's' situation to assess the allegations of abuse at issue in this case. State Agents 1-10 then knowingly presented incomplete, inaccurate, misleading, and unsubstantiated information to decision makers, including the judiciary, who relied upon State Agents 1-10 in deciding to remove the adult Plaintiffs' children from their protection and custody.

50. State Agents 1-10 involved in this matter had a mandatory, non-delegable duty to investigate conditions of child abuse and neglect. State Agents 1-10 acted with deliberate indifference toward the rights of Plaintiffs by failing to properly investigate episodes of reported child abuse and verify the qualifications of Dr. Woods. State Agents 1-10 were on notice of Wood's negligent investigation of child abuse that harmed both the children and parents. At least three other doctors, a superior court judge, and a child welfare worker all raised concerns about Dr. Woods's lack of credentials and questionable expertise.

51. In deliberate indifference of the rights of Plaintiff, Dr. Woods purposefully or recklessly ignored, overlooked, or failed to document exculpatory evidence for presentation to the court determining the validity of removal of Plaintiffs and regarding investigations into alleged abuse of minor Plaintiffs. Without a sufficient medical basis, Dr. Woods over-emphasized other evidence in her reports and/or testimony regarding the alleged abuse of minor Plaintiffs.

52. Dr. Woods's testimony under oath also raised significant questions about her integrity and honesty generally, particularly given her position of power and influence. State Agents 1-10 failed to take steps that would lead to the suspension or revocation of Dr. Wood's medical license despite having actual knowledge, or at least constructive knowledge, of criminal misconduct.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 15 of 19

53. State Agents 1-10 knowingly supplied to the judiciary Dr. Woods's incomplete, invalid, unsupported, and deficient opinions and otherwise acted with deliberate indifference toward minor Plaintiffs' rights in obtaining a full, complete, and accurate picture.

54. Defendants knew or should have known that evidence regarding the alleged abuse of minor Plaintiffs was incomplete, insufficient, or unsubstantiated. Despite this knowledge, Defendants provided and shared the inaccurate, misleading, and incomplete information to decision makers, including the judiciary, which resulted in the removal of minor Plaintiffs from the care of their parents.

55. Despite knowingly lacking proper training and credentialling, Dr. Woods took affirmative actions to wrongfully opine that minor Plaintiffs had suffered child abuse or neglect when they in fact had not, motivated by financial rewards and a steady stream of State referrals for child abuse evaluation work. For each minor Plaintiff, Dr. Woods ignored exculpatory evidence or improperly cited other evidence to wrongfully establish child abuse or neglect. Dr. Woods then knowingly reported her improper and false conclusions to the State, which were used to remove minor Plaintiffs from their family families.

56. Defendants acted with deliberate indifference toward Plaintiffs' constitutional rights. As a result of Defendants' actions and inactions, Plaintiffs were permanently injured.

### V.   CAUSES OF ACTION

**COUNT I**
**VIOLATION OF CIVIL RIGHTS**
**As to Dr. Woods and State Agents 1-10**
**(42 U.S.C. § 1983)**

57. <u>Civil Rights Violation.</u> Based on the paragraphs set forth and alleged above, Defendant Dr. Woods and Defendant State Agents 1-10 are liable for compensatory and punitive damages for their affirmative acts and omissions that were deliberately indifferent to the clearly established constitutional and statutory rights of Plaintiffs "family unity right" as

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 16 of 19

articulated in *Mabe v. San Bernardino Cnty. Dep't of Public Soc. Servs.*, 237 F.3d 1101 (9th Cir. 2001) and *Lesley for Lesley v. Dept. of Soc. And Health Srvs.*, 83 Wn. App. 263 (1996), as well as the clearly established constitutional right to be free from deliberate fabrication of evidence as articulated in *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017), the effect of which was the creation of a danger that minor Plaintiffs would be removed from family homes for improper purposes due to, *inter alia*, Defendants' deliberate indifference in presenting false or misleading or incomplete evidence to the tribunal, Defendants' deliberate indifference in eschewing, ignoring, or downplaying exculpatory evidence of child abuse and neglect, Defendants' knowingly emphasizing evidence to improperly support a conclusion of child abuse and neglect, State Agents 1-10 knowingly retaining and utilizing Dr. Woods despite her history of improperly advocating for the removal of children from family homes, State Agents 1-10 knowingly presenting to the judiciary faulty opinions of Dr. Woods that lacked evidentiary support in order to effectuate the removal of minor Plaintiffs from their family homes, all done with reckless and deliberate indifference of the rights of Plaintiffs, depriving Plaintiffs of the parent-child relationship and their liberty interest in the same without due process of the law, and all done in violation of the due process, familial association, and equal protection afforded under the Fourteenth Amendment, in violation of the reasonable seizure requirement of the Fourth Amendment, in violation of the First Amendment's guarantee of familial association, as well as in violation of the Ninth Amendment, brought pursuant to 42 USC § 1983.

## VI. RESERVATION OF RIGHTS

58. <u>Reservation of Rights.</u> Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

## VII. JURY DEMAND

59. <u>Jury Demand.</u> Plaintiffs demand that this action be tried before a jury.



COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES

## VIII. PRAYER FOR RELIEF

60. <u>Relief.</u> Plaintiffs respectfully requests the following relief:

    A.    That the Court award Plaintiffs appropriate relief, to include all special and general damages established at trial;

    B.    That the Court impose punitive damages under any provision of law under which punitive damages may be imposed;

    C.    That the Court award costs, reasonable attorneys' fees, and statutory interest under any applicable law;

    D.    That the Court award pre-judgment interest on items of special damages;

    E.    That the Court award post-judgment interest;

    F.    That the Court award reasonable costs, attorney fees, prejudgment interest, and exemplary damages allowed under law;

    G.    That the Court award Plaintiff such other, favorable relief as may be available and appropriate under law or at equity; and

    H.    That the Court enter such other and further relief as the Court may deem just and proper.

SIGNED this 2nd day of November, 2022.

PFAU COCHRAN VERTETIS AMALA PLLC

By: <u>*/s/ Darrell L. Cochran*</u>
Darrell L. Cochran, WSBA No. 22851
Attorney for Plaintiffs

PFAU COCHRAN VERTETIS AMALA PLLC

By: <u>*/s/ Kevin M. Hastings*</u>
Kevin M. Hastings, WSBA No. 42316
Attorney for Plaintiffs

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

TORRONE LAW, LLC

By: */s/ Chris Torrone*
Chris Torrone, WSBA No. 35541
Attorney for Plaintiffs

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
AND DAMAGES

Page 19 of 19

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654